

**NUMBER 13-09-00249-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**IN RE: BROCK SPECIALTY SERVICES, LTD.**

**On Petition for Writ of Mandamus.**

**O P I N I O N**

**Before Justices Yañez, Rodriguez, and Benavides**
**Opinion by Justice Rodriguez**

Through a petition for writ of mandamus, relator, Brock Specialty Services, Ltd. ("Brock"), seeks to compel the trial court to vacate its order denying Brock's motion to compel arbitration. We conditionally grant the writ.

I. Background

Jose Espinosa, the real-party-in interest, worked for Brock as a forklift driver. He was injured in the course and scope of employment and filed a workers' compensation claim. His employment was later terminated. Espinosa brought suit against Brock alleging that he was discharged in retaliation for filing a workers' compensation claim. *See* TEX.

LAB. CODE ANN. § 451.001 (Vernon 2006). Brock filed a motion to compel arbitration under the Federal Arbitration Act ("FAA") based on an arbitration agreement signed by Espinosa. *See* 9 U.S.C. §§ 1-16 (1999). The agreement, contained in Brock's "Dispute Resolution Policy," provides, in part:

1. This Policy creates a mutual obligation to arbitrate, is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and is effective as of July 1, 2007 ("Effective Date"). This Policy applies to any dispute arising out of or related to employment or termination of employment with Brock Holdings III, Inc., or one of its affiliates, subsidiaries, or parent (the "Brock Group" 1). This Policy requires all such disputes that have not otherwise been resolved ("Disputes") to be resolved only through final and binding arbitration and not by way of court or jury trial. Such Disputes, without limitation, include disputes arising out of or relating to: all issues of arbitrability, including but not limited to unconsionability and all grounds as may exist at law or in equity for the revocation of any contract, the interpretation or application of this Policy, employment application process, employment relationship, any customers, clients and/or any other person under contract with the Brock Group, all property upon which, and/or with which the employee may or has performed any work or services for or on behalf of any person, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and federal, state, or other statutes and/or ordinances, if any, addressing the same or similar subject matters, and all other federal, state, or other statutory and common law claims including retaliation claims (but excluding other workers' compensation and unemployment insurance claims). . . .

2. The parties agree that they have engaged in transactions which may affect interstate commerce.

3. All Disputes shall be exclusively resolved by final and binding arbitration exclusively conducted under the Arbitration Rules in effect at the time of the arbitration demand of National Mediation Arbitration, Inc. ("NMAI"); provided however, any party may require, by written notice, that non-binding mediation be conducted in parallel with the arbitration demand process. At any time, a copy of such Arbitration Rules is available upon written request to the HR Department of the Brock Group. All Disputes shall be administered by NMAI and

2

conducted before one (1) NMAI Arbitrator. A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. . . .

. . . .

7.  In the event any provision of this Dispute Resolution Policy is determined by a court of competent jurisdiction to be illegal, invalid[,] or unenforceable, the legality, validity[,] and enforceability of the remaining provisions shall not be affected thereby.

(Emphasis in original).

## II. FAA

The FAA applies to transactions that involve interstate commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

The Dispute Resolution Policy expressly provides that it is governed by the FAA and further states that the "parties agree that they have engaged in transactions which may affect interstate commerce." *See In re People's Choice Home Loan, Inc.*, 225 S.W.3d 35, 40 (Tex. App.–El Paso 2005, orig. proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.–Houston [1st Dist.] 2002, orig. proceeding); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.–San Antonio 2000, orig. proceeding [leave denied]); *see also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478-79 (1989). The FAA may govern a

3

written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application.  *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam).  When parties have designated the FAA to govern their arbitration agreement, their designation should be upheld.  *See id.* at 606 & n.3; *see also In re Int'l Bank of Commerce*, No. 13-07-00693-CV, 2008 Tex. App. LEXIS 519, 16-17 (Tex. App.–Corpus Christi Jan. 18, 2008, orig. proceeding [mand. denied] ) (mem. op) (collecting cases).  Espinosa asserts defenses against arbitration, generally, but does not contest the application of the FAA.  Accordingly, pursuant to the parties' agreement, we apply the FAA.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy.  *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding).

### III.  Standard of Review

A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law.  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).   We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Id.* at 839-40.  The relator must show that the trial court could reasonably have reached only one decision.  *Id.*  The reviewing court cannot disturb the trial court's decision unless

4

it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

## IV. Validity and Scope

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at

754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, Espinosa signed the Dispute Resolution Policy and his arguments do not deny the existence of this signed document. Accordingly, we conclude that Brock has established the existence of an arbitration agreement. Moreover, given the breadth of the arbitration agreement, including its express application to retaliation claims, we conclude that the claims at issue in this lawsuit fall within the scope of this agreement. *See, e.g., FirstMerit Bank, N.A.*, 52 S.W.3d at 754.

## V. Defenses

Having concluded that a valid arbitration agreement exists and Espinosa's claims fall within the scope of that agreement, we now turn our attention to Espinosa's alleged defenses to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ).

Espinosa asserts that the trial court did not abuse its discretion in refusing to compel arbitration because impossibility renders Brock's request for relief moot. He argues that the arbitration clause included in his contract with Brock is unenforceable because NMAI,

the arbitrator designated in the contract for resolution of disputes, is a defunct corporation and has been so since August 22, 2003, when its corporate charter was forfeited. Thus, it was not in existence at the time the employment contract at issue was formed on August 7, 2007. Espinosa further argues that because NMAI is defunct, the NMAI arbitration rules do not exist, and there are no NMAI arbitrators, so "performance has been therefore rendered impossible." Stated otherwise, Espinosa contends that the non-existence of the designated arbitrator rendered performance of the arbitration clause impossible and, therefore, excused the parties from being bound by it.

Section 5 of the FAA provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5; *see also FirstMerit Bank, N.A.*, 52 S.W.3d at 757 (stating that the "FAA permits the trial court to choose an alternate set of arbitrators"); *Tex. Best Staff Leasing, Inc. v. Herrera (In re Tex. Best Staff Leasing, Inc.)*, Nos. 01-08-00296-CV, 01-08-00418-CV, 2008 Tex. App. LEXIS 7715, at *13-15 (Tex. App.–Houston [1st Dist.] Oct. 9, 2008, no pet.) (appeal & orig. proceeding) (mem. op.) (concluding that relator had waived the applicability of section five of the FAA by failing to present the issue to the trial court); *cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 171.041(b) (Vernon 2005) (providing for the

7

substitution of arbitrators where the agreed method of appointment of arbitrators "fails or cannot be followed" under the Texas Arbitration Act).

Section five of the FAA has been utilized in situations like that herein, where the arbitrator specified in the contract was no longer in existence. *See, e.g., Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *Stinson v. America's Home Place, Inc.*, 108 F. Supp. 2d 1278, 1285 (M.D. Ala. 2000); *Warren v. Am. Home Place*, 718 So. 2d 45, 48-49 (Ala. 1998); *Astra Footwear Ind., v. Harwyn Int'l Inc.*, 442 F.Supp. 907, 910-11 (S.D. N.Y. 1978); *Haw. Teamsters & Allied Workers v. Honolulu Rapid Transit Co.*, 343 F. Supp. 419, 425 (D. Haw. 1972). In *Warren*, for instance, the court found that there was no evidence indicating that the identity of the arbitrator was an essential term of the contract, and accordingly, rejected the plaintiff's argument that the unavailability of the designated arbitrator rendered the arbitration clause unenforceable. *See* 718 So. 2d at 48. As stated by the Eleventh Circuit Court of Appeals, "[o]nly if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Brown*, 211 F.3d at 1222 (quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990)).

The same reasoning applies in the case currently before the Court. Although the arbitrator specified in Espinosa's contract with Brock is not now available to resolve their dispute, there is no indication or evidence herein that the choice of NMAI as arbitrator or NMAI's rules for conducting arbitration was an integral or essential part of the agreement to arbitrate. Instead, the language of the Dispute Resolution Policy indicates otherwise, insofar as it provides that if a provision thereof is determined to be invalid or

8

unenforceable, the legality, validity, and enforceability of the remaining provisions are to remain unaffected. Accordingly, section five of the FAA dictates that the trial court enforce the arbitration clause and choose another arbitrator.

## VI. Unconscionability

In addition to contending that performance of the arbitration agreement was rendered impossible, Espinosa also contends that the arbitration agreement is unenforceable because it is unconscionable. The trial court's order denying arbitration was explicitly based on impossibility, and the record before us is not fully developed with regard to Espinosa's unconscionability arguments. Espinosa argues that this Court should not address unconscionability given the trial court's express rationale for its decision. In contrast, Brock asks us to conclude that Espinosa has waived his unconscionability arguments.

This Court recently addressed the question whether our interlocutory review of arbitration orders should consider alternative grounds for affirming the trial court's order when the challenged order specifically sets forth the basis for its ruling. *See Int'l Bank of Commerce*, 2008 Tex. App. LEXIS 519, at \*41-\*43. The Fourteenth Court addressed our analysis therein as follows:

> Relators rely on *In re International Bank of Commerce* in support of their position that summary judgment rules have no application here. In that case, the trial court refused to compel arbitration based on its determination that the bank had waived its right to arbitrate. The bank challenged that finding in its petition for writ of mandamus, but failed to address the other defenses to arbitration that real parties in interest had raised in the trial court. The issue in the mandamus proceeding was whether the bank was required to challenge the other potential grounds to defeat arbitration that were not expressly ruled on by the trial court.

> The court of appeals . . . recited the summary judgment rule that, when the court states the basis for its ruling, an appellant is required to attack only the stated ground for the ruling. The court of appeals will usually decline to

9

> address the alternative grounds and, instead, remand the case to the trial court for consideration of the additional grounds. However, when the parties raise the alternative grounds, the court of appeals, in the interest of judicial economy, may rule on those grounds presented to the trial court, but not expressly ruled on . . . . It is apparent that *In re International Bank of Commerce* relied, at least in part, on summary judgment rules and therefore does not offer support to relators' position that summary judgment rules are inapplicable to original proceedings.

*In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 170 (Tex. App.–Houston [14 Dist.] 2008, orig. proceeding) (internal citations omitted). We agree with the Fourteenth Court's assessment that the relators from that case misinterpreted our holding in *International Bank of Commerce*.

In the interest of judicial economy, appellate courts have discretion to consider alternate grounds to affirm the trial court's order when those grounds were presented to the trial court but not expressly ruled upon, when the parties raise them for review, and when the record is well developed with regard to those alternate grounds. *See Int'l Bank of Commerce*, 2008 Tex. App. LEXIS 519, at *43. Similarly, when the record is not fully developed with respect to those alternative grounds, appellate courts should refrain from addressing those issues beyond the trial court's express basis for its ruling. *See id.* To hold otherwise would grossly undermine judicial economy insofar as parties would have an incentive to fully develop the record on superfluous grounds even after the trial court has ruled in the party's favor. This reasoning is well established in the summary judgment context,[1] and we see no reason why it should not apply in the context of our interlocutory review of arbitration orders.

---

[1] *Compare State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (refraining from considering alternative grounds), *with Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 624 (Tex. 1996) (explaining when the interest of judicial economy is best served by addressing alternative grounds).

In this case, the record is not fully developed with respect to Espinosa's unconscionability argument, and once the trial court expressed an inclination to rule in favor of Espinosa based on his impossibility argument, Espinosa had no incentive to fully develop the record on unconsionability.  Accordingly, we do not address the issue of unconscionability herein.

## VI.  Conclusion

We conclude that the trial court erroneously denied Brock's motion to compel arbitration.  Accordingly, we conditionally grant Brock's petition for writ of mandamus and direct the trial court to order these claims to arbitration under the FAA.  The writ of mandamus will issue only if the trial court fails to comply.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed
this 29th day of May, 2009.