Opinion issued January 21, 2010














     


In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00191-CV




ROYCE HOMES, L.P. AND HAMMERSMITH GROUP, INC., Appellants

V.

DEBORAH F. BATES, VERDIA L. BOYCE, WADIE AND DEMETRIA
BUTLER, ROBERT AND BILLYE EVANS, DARLENE HANDY,
JOSAULYN HOSKINS, JINNELL RAY, TRILYON TAYLOR, AND
BARBARA WILSON, Appellees




On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 04-CV-107892-D




O P I N I O N

          Appellant, Royce Homes, L.P., appeals the order of the trial court confirming
an arbitration award and final judgment in favor of appellees, a group of homeowners
(“homeowners”). In three issues, Royce Homes argues that (1) the trial court abused
its discretion by failing to appoint the arbitrator specified in the parties’ arbitration
agreement; (2) the trial court erred in failing to vacate the arbitration award because
the arbitrator exceeded his powers; and (3) the trial court erred in failing to vacate the
arbitration award because it demonstrated a manifest disregard for the law and a gross
mistake in interpreting and applying the law.
          We affirm.
Background
          The nine homeowner appellees purchased homes from Royce Homes between
1998 and 1999 in the Garden Valley Estates subdivision. In purchasing their homes,
each homeowner received a “2-10 Home Buyer’s Warranty,” which was to be
administered by Home Buyer’s Warranty, Inc. (“HBW”). The “2-10 Home Buyer’s
Warranty” stated: “This Warranty is a contract between you and your Builder. HBW
is the warranty administrator, but NOT a warrantor under the contract.” The
arbitration provision in the warranty stated:
Any and all claims, disputes and controversies arising under or relating
to this Agreement, including without limitation, any claim of breach of
contract, negligent or intentional misrepresentation or nondisclosure in
the inducement, execution or performance of any contract, and breach
of any alleged duty of good faith and fair dealing, shall be submitted to
arbitration by and pursuant to the rules of Construction Arbitration
Services, Inc. (hereinafter “CAS”)


 in effect at the time of the request for
arbitration. If CAS shall for any reason be unable or unwilling to
conduct, or is disabled from conducting such arbitration, the arbitration
shall be conducted by and pursuant to the rules of the American
Arbitration Association applicable to home warranty arbitration
proceedings in effect at the time of the request for arbitration. The
decision of the arbitrator shall be final and binding and may be entered
as a judgment in any State or Federal court of competent jurisdiction.
 
. . . .
 
The parties expressly agree that this arbitration provision involves and
concerns interstate commerce and is governed by the provisions of the
Federal Arbitration Act, (9 U.S.C. § 1, et seq.), now in effect and as the
same may from time to time be amended.
 
Some of the homeowners


 also signed earnest money contracts that each contained
an arbitration provision in an attached arbitration addendum (“Espree Arbitration
Addendum”). That provision stated, “Any controversy, claim or dispute arising out
of or related directly or indirectly but not limited to . . . the construction or repair of
the home . . . shall be settled by arbitrations [conducted by CAS].”
          On February 11, 1999, disgruntled residents of the Green Valley Estates filed
suit against their homebuilders, the neighborhood developer, and various other
entities. This original lawsuit sought to establish a separate homeowner’s association
and to address claims surrounding the creation of the subdivision and construction
defects. None of the homeowners filed warranty complaints by HBW under the
Home Buyer’s Warranty provisions for the construction defects that were the subject
of their claims. Nor did Royce Homes seek to compel arbitration at this point.


 After
several interventions and amendments of the pleadings, additional plaintiffs were
joined, and some plaintiffs expanded their claims to include claims for construction
defects, breach of contract, fraud, and DTPA violations. Royce Homes and its
general partner Hammersmith were made parties to the litigation in 2002.
          In February 2004, the parties entered into a settlement agreement (“Settlement
Agreement”). This agreement expressly excluded the homeowners’ construction
defect claims against Royce Homes and Hammersmith. The Settlement Agreement
stated:
Notwithstanding anything to the contrary herein, it is understood and
agreed that this settlement and the compliance with the terms and receipt
of and payments made hereunder shall not settle or affect any of the
claims and causes of action arising out of or created by the alleged
deficiencies in the construction of any home, Construction Defects
Claims, now pending against Royce Homes, L.P. by any of the
homeowners who purchased homes from Royce Homes, L.P. All claims
against Royce Homes, L.P. related to such alleged construction defects
remain pending, abated for arbitration under Cause No. 107,892-D. . . . 
Specifically, all claims against Royce Homes, L.P. related to
construction defects in the construction of the property itself
(“Construction Defect Claims”) as set forth in Plaintiffs’ and
Intervenors’ First Supplemental Petition in Response to DWM
Holdings’ Special Exceptions and Pursuant to Court Order, shall remain
pending and are abated for arbitration.
 
. . . . 
 
The parties further acknowledge that the purpose of this agreement is to
resolve disputed claims made, in order that these parties may buy their
peace forever, with the exception of all construction defects claims
which are to be resolved through either settlement and/or arbitration.
 
. . . .
 
This document together with the take nothing judgment dismissing
Cause No. 107,892 contains the entire agreement between the parties
and the terms hereof are contractual and not mere recitals.
 
. . . . 
 
This agreement shall be governed by the laws of the State of Texas.
 
(Emphasis added.) The construction defect claims were severed from the rest of the
litigation on April 12, 2004.


 Neither the homeowners nor Royce Homes filed the
arbitration proceedings contemplated in the settlement agreement.
          On May 6, 2004, the homeowners filed their eleventh amended petition against
Royce Homes and its general partner, Hammersmith, on the severed claims. The
eleventh amended petition alleged causes of action for breach of contract based on
Royce Homes’ alleged breach of “numerous material terms of the contractual
agreements . . . including the failures to construct the homes as promised and in a
good and workmanlike fashion [and] the implied warranty of habitability and implied
warranty of good workmanship”; common law fraud and unconscionability based on
statements and respresentations made by Royce Homes “concerning the quality of the
construction and the skill to be utilized by” Royce Homes; statutory fraud in a real
estate transaction in violation of Texas Business and Commerce Code section 27.01;
and deceptive trade practices.
          Two years later, on June 29, 2006,


 the trial court notified the parties that it had
set the case on the non-jury trial docket on September 6, 2006 and that “there will be
no continuances or passes [granted].” A month later, on July 25, 2006, ten of the
fifteen homeowners, whose claims had been severed


 but who had not signed Espree
Arbitration Addendums with their earnest money contracts, moved the trial court to
appoint an arbitrator pursuant to section 171.041 of the Texas Arbitration Act (TAA). 
This motion stated:
          All . . . 15 homeowner disputes were referred to arbitration by
agreement. Five of the homeowners had previously signed an Espree
Arbitration Addendum wherein an arbitrator was designated in advance. 
The remaining [homeowners] have no such agreement, but have agreed
to arbitrate solely in accordance with the Texas Arbitration Act.
          [The 10 moving homeowners] have proposed to [Royce Homes]
that an agreed arbitrator arbitrate all 15 disputes at one hearing. To date,
the [homeowners] have received no response to this suggestion or
request. Therefore, due to the limited time schedule set forth by the
Court, and in order to avoid dismissal, the [10 moving homeowners] are
pursuing their rights under the Texas Arbitration Act and the other 5
homeowners are pursuing theirs under their agreements.
 
(Emphasis added.) The motion also stated that the ten moving homeowners had
agreed to no “defined method of appointment of arbitrators” and that it was proper
for the trial court to appoint one for them under section 171.041(b) of the TAA. The
homeowners suggested three candidates for arbitrator, including Tom McDonald. On
July 31, 2006, the trial court appointed Tom McDonald arbitrator for the fifteen
homeowners named in the motion.
          In response to the homeowners’ application to appoint an arbitrator under the
TAA, on August 8, 2006, Royce Homes filed a motion to enforce the arbitration
agreements signed by all fifteen of the homeowners in purchasing their homes, which
provided that CAS should act as arbitrator, and it filed a motion to reconsider the
appointment of Tom McDonald as arbitrator. Royce Homes argued that because all
fifteen homeowners with pending construction defect claims had signed arbitration
provisions in their Home Buyer’s Warranty agreements and some of the homeowners
had signed arbitration agreements in the Espree Arbitration Addendums, and because
both required arbitration to be conducted by CAS, the arbitration should be conducted
by CAS.
          On August 17, 2006, the five homeowners who had not joined the original
motion to appoint an arbitrator pursuant to the TAA


 moved the trial court for
appointment of Tom McDonald as arbitrator for their claims. This motion stated, “At
the time of the filing of the first motion for appointment of an arbitrator, it was
believed that Construction Arbitration Services (“CAS”) would act as arbitrator for
the remaining five [homeowners].” The motion stated that the homeowners had
attempted to comply with CAS’s procedural rules by filing the proper applications
and arranging to pay the applicable fees, but CAS refused to accept the role of
arbitrator.
          Specifically, in his supporting affidavit, the attorney for the homeowners
averred that in June 2006, the homeowners contacted CAS through its Construction
Dispute Representative, Cardell Wade, who “directed [lawyers for the homeowners]
to CAS’s website and advised [them] of the necessary applications, rules and
information needed” to pursue arbitration though CAS. In July 2006, attorneys for
the homeowners prepared applications and helped the homeowners make
arrangements to pay the application fee to CAS “in order to have it immediately
appoint its names arbitrator and enter a scheduling order” to avoid the trial court’s
order for dismissal. The motion further stated:
          Then, on August 14, 2006, CAS’s representative, Cardell Wade,
for no apparent reason, informed counsel for [the homeowners] that
CAS would no longer accept the role as arbitrator under these contracts. 
He further informed counsel that unless the [homeowners] made
applications for limited warranty claims, only, through Home Buyer’s
Warranty, Inc., the purported administrator of an alleged warranty
program in which the builder Royce Homes, L.P., attempted to enroll
Movants at the time of their respective closings, and Home Buyers
Warranty, Inc. and Royce Homes, L.P., made an application to CAS,
CAS would not arbitrate these five claims.
          Despite being informed that the claims in this dispute were being
submitted to arbitration pursuant to the agreements reached in this case
and upon the Court’s order severing the fifteen remaining claims,
Cardell Wade informed counsel for Movants that CAS still refused to
accept a request of demand for arbitration from the Movants and that
CAS would refuse to act as arbitrator even if ordered by this Court to do
so, unless the homebuilder, Royce Homes, L.P., and Home Buyers
Warranty, Inc., requested CAS to do so.
          CAS’s refusal to arbitrate this matter coupled with its refusal to
act under any order entered by this Court and Royce Homes, L.P.’s
refusal to arbitrate this dispute as a joint claims arbitration leaves
Movants with no alternative but to seek appointment of an arbitrator
pursuant to Section 171.041 of the Texas Arbitration Act. . . .
 
The affidavit of the attorney for the homeowners also related the details of the
interaction between the homeowners and CAS in support of these claims.
          Also on August 17, 2006, Royce Homes filed a motion for reconsideration,
arguing that Royce Homes had sought to compel the homeowners to arbitration with
CAS since it had first made an appearance in the case and that, under both the TAA
and the FAA, the trial court was required to appoint the arbitrator specified in the
arbitration agreements.
          On August 22, 2006, Royce Homes filed a response to the remaining five
homeowners’ motion to have Tom McDonald appointed as arbitrator. This response
outlined Royce Homes’ procedure for resolving warranty disputes, including
arbitration before CAS. Royce Homes claimed that it was the homeowners’ failure
to follow the procedures required to invoke arbitration before CAS that had led to the
dispute over appointment of an arbitrator. Royce Homes attached the affidavit of
Cardell Wade, which stated:
          The CAS Rules for the Arbitration of Home Warranty Disputes
. . . require that the Parties agree to utilize the CAS Rules either through
a separate agreement or as part of a warranty program. In those
instances in which the home is enrolled in a warranty program, a
Homeowner making a claim starts the arbitration process by filing the
appropriate forms with his or her warranty insurer, which then forwards
the case to CAS, which then initiates the arbitration process and
appoints an Arbitrator. CAS will accept a court appointment to act as
an arbitration administrative agency, pursuant to the terms of a court
order issued by a court of competent jurisdiction.
          CAS has arbitrated numerous warranty claims involving homes
in the Home Buyers Warranty (2-10) program. However, it is necessary
for the Homeowner to complete the forms required by Home Buyers
Warranty (2-10), and to initiate the process with Home Buyers Warranty
(2-10), in order for the Arbitration process to ultimately be administered
by CAS.
          In a prior phone conference I previously advised Karl Hoppess,
Esq., that his client’s home is enrolled in the Home Buyers Warranty (2-10) program, and Home Buyers Warranty (2-10) must be contacted in
order for this clients to initiate their “Pre-Arbitration” process, and to
prevent the Homeowner(s) warranty from being voided with Home
Buyers Warranty (2-10), along with the possible resolving [sic] the
dispute between the Parties before send [sic] the case to CAS. Upon
receipt of the Homeowner(s) case file from Home Buyers Warranty (2-10), CAS can then initiate the Arbitration process, and appoint an
Arbitrator from its panel of Arbitrators.
 
          On August 22, 2006, the trial court signed an order denying Royce Homes’
motions to enforce the arbitration agreement and to reconsider the appointment of
Tom McDonald as arbitrator. On September 1, 2006, the trial court also denied
Royce Homes’ motion for reconsideration of those rulings and ordered the trial
setting removed from its September 6, 2006 docket.
          Royce Homes subsequently filed a petition for writ of mandamus in this Court
seeking to enforce the arbitration provisions selecting CAS as arbitrator, or
alternatively, applying CAS procedural rules. This petition for writ of mandamus was
denied without an opinion on the merits on March 29, 2007.



          On April 12, 2007, Royce Homes filed a motion with McDonald, the court-appointed arbitrator, again seeking to enforce the arbitration provisions designating
CAS as arbitrator, or alternatively, implementing CAS procedures. The arbitrator
denied this motion and set a schedule for conducting the arbitration proceedings. At
the beginning of the arbitration hearing on November 12, 2007, Royce Homes
repeated its request to have CAS appointed as arbitrator or to have the arbitration
conducted following CAS procedures. The arbitrator denied Royce Homes’ request
again and began the hearing.
          On January 1, 2008, the arbitrator granted the homeowners collectively a
$336,121.26 award, including over $82,000 for actual damages and more than
$245,000 as treble damages, plus $75,000 in attorney’s fees and $15,000 in litigation
expenses.
          Royce Homes moved the trial court to vacate the arbitration award. The
homeowners filed a motion to confirm the award. On February 29, 2008, the trial
court entered a final judgment confirming the full amount of the arbitration award. 
Royce Homes appeals.
Controlling Law
          We first determine whether the contract is controlled by the Federal Arbitration
Act (FAA) or the Texas General Arbitration Act (TAA), or both. The parties dispute
which statute governs here. Royce Homes argues that the FAA applies, while the
homeowners argue that the settlement agreement provided that it was “governed by
the laws of the State of Texas.”
          The FAA preempts all otherwise applicable inconsistent state laws, including
any inconsistent provisions of the TAA, under the Supremacy Clause of the United
States Constitution. U.S. Const. art. VI; see Allied-Bruce Terminix Co. v. Dobson,
513 U.S. 265, 272, 115 S. Ct. 834, 838 (1995). The FAA applies to contracts
involving interstate commerce. 9 U.S.C. § 2. It requires only that interstate
commerce be involved or affected. Allied-Bruce, 513 U.S. at 277–81, 115 S. Ct. at
841–43; see also In re Brock Specialty Servs., 286 S.W.3d 649, 653 (Tex.
App.—Corpus Christi 2009, orig. proceeding) (“‘Commerce’ has been broadly
defined and encompasses contracts relating to interstate commerce.”). Interstate
commerce is evidenced by location of headquarters in another state, manufacture of
components in a different state, transportation of goods across state lines, and billings
prepared in another state, among other factors. Stewart Title Guar. Co. v. Mack, 945
S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1997, writ dism’d w.o.j.); see also
Robinson v. TCI/US West Commc’ns Inc., 117 F.3d 900, 904 (5th Cir. 1997) (defining
interstate commerce as “trade, commerce, transportation, or communication among
the several States, or between any foreign country and any place or ship outside
thereof”). The burden is on the party seeking to compel arbitration to establish its
right under the FAA. Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d 688, 696 (Tex.
App.—Houston [14th Dist.] 1999, no pet).
          The Texas Supreme Court has held that a Texas choice-of-law provision will
not be construed to select the TAA to the exclusion of the FAA unless the clause
specifically excludes the application of federal law. In re L & L Kempwood Assocs.,
L.P., 9 S.W.3d 125, 127–28 (Tex. 1999); Roehrs v. FSI Holdings, Inc., 246 S.W.3d
796, 803 (Tex. App.—Dallas 2008, pet. denied). Texas courts have also held that a
general choice-of-law clause such as the one in the settlement agreement does not
satisfy that standard. Roehrs, 246 S.W.3d at 803 (citing Dewey v. Wegner, 138
S.W.3d 591, 596 & n.5 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).
          Royce Homes, L.P. is a Delaware Limited Partnership; therefore, this
agreement affects interstate commerce. See Stewart Title Guar. Co., 945 S.W.2d at
333. Accordingly, we apply the FAA, while recognizing that the TAA also applies
to the extent it is consistent with the FAA. See Roerhs, 246 S.W.3d at 803 (citing In
re D. Wilson Constr. Co., 196 S.W.3d 774, 779–80 (Tex. 2006)).
Review of Confirmation of Arbitration Award
          We review de novo a trial court’s confirmation of an arbitration award under
the FAA based on the entire record. Myer v. Americo Life, Inc., 232 S.W.3d 401, 407
(Tex. App.—Dallas 2007, no pet.); Tanox, Inc. v. Akin, Gump, Strauss, Hauer &
Feld, L.L.P., 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied). All reasonable presumptions are indulged to uphold the arbitrator’s decision,
and none are indulged against it. Bailey & Williams v. Westfall, 727 S.W.2d 86, 90
(Tex. App.—Dallas 1987, writ ref’d n.r.e.).
          An arbitration award is presumed valid and entitled to great deference. Myer,
232 S.W.3d at 407–08. When reviewing an arbitration award, we may not substitute
our judgment merely because we would have reached a different decision. Bailey,
727 S.W.2d at 90. Because judicial review of an arbitration award adds expense and
delay that diminishes the benefits of arbitration as an efficient, economical system for
resolving disputes, our review of the arbitration award is “extraordinarily narrow.” 
See Myer, 232 S.W.3d at 408. Accordingly, we may not vacate an award even if it
is based upon a mistake in law or fact. Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d
264, 266 (Tex. App.—Houston [14th Dist.] 1995, no writ).
          The Supreme Court has recently held that the statutory grounds provided in
sections 10 and 11 of the FAA for vacating, modifying, or correcting an arbitration
award are the exclusive grounds for vacating an arbitration award. Hall St. Assocs.,
L.L.C. v. Mattel, Inc., 522 U.S. 576, 128 S. Ct. 1396, 1403 (2008).


 Section 10(a)
permits a court to vacate an arbitration award:
(1) where the award was procured by corruption, fraud, or undue means;
 
(2) where there was evident partiality or corruption in the arbitrators, or
either of them;
 
(3) where the arbitrators were guilty of misconduct in refusing to
postpone the hearing, upon sufficient cause shown, or in refusing to hear
evidence pertinent and material to the controversy; or of any other
misbehavior by which the rights of any party have been prejudiced; or
 
(4) where the arbitrators exceeded their powers, or so imperfectly
executed them that a mutual, final, and definite award upon the subject
matter submitted was not made.
 
9 U.S.C. § 10(a).
Validity of the Arbitration Proceedings
          In its first and second issues, Royce Homes argues that the trial court erred in
appointing an arbitrator who was not specified in the agreement between the parties
and that the trial court erred in failing to vacate the arbitration award because the
appointed arbitrator exceeded his authority.


 In its third issue, Royce Homes argues
that the trial court erred in failing to vacate the arbitration award because the award
demonstrated a manifest disregard of the law and gross mistake.
A.      Scope of Arbitrator’s Powers
          Royce Homes argues that the arbitration should have been conducted by CAS,
or in the alternative, that it should have been conducted following CAS procedures. 
Royce Homes argues that the trial court erred in appointing Tom McDonald as
arbitrator instead of CAS, and that McDonald exceeded the scope of his powers by
not referring the arbitration to CAS or, alternatively, by not conducting the arbitration
following CAS procedures.
          Arbitration is a matter of contract, and “the power and authority of the
arbitrators in an arbitration proceeding is dependent on the provisions under which
the arbitrators were appointed.” Brook v. Peak Int’l, Ltd., 294 F.3d 668, 672 (5th Cir.
2002) (quoting Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir.
1991); see also Myer, 232 S.W.3d at 408 (holding that arbitrator’s authority “is
defined by the contract containing the arbitration clause and by the issues actually
submitted to arbitration”). Parties to an arbitration agreement may determine by
contract the method for appointing an arbitrator and, under the FAA, the agreed upon
method of appointment “shall be followed.” See id. (citing 9 U.S.C. § 5).
          However, section 5 of the FAA also provides that the agreed-upon method of
appointing an arbitrator can be set aside under some circumstances. Section 5 of the
FAA provides:
If in the agreement provision be made for a method of naming or
appointing an arbitrator or arbitrators or an umpire, such method shall
be followed; but if no method be provided therein, or if a method be
provided and any party thereto shall fail to avail himself of such method,
or if for any other reason there shall be a lapse in the naming of an
arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the
application of either party to the controversy the court shall designate
and appoint an arbitrator or arbitrators or umpire, as the case may
require, who shall act under the said agreement with the same force and
effect as if he or they had been specifically named therein; and unless
otherwise provided in the agreement the arbitration shall be by a single
arbitrator.
 
9 U.S.C. § 5. As the Texas Supreme Court has stated, “Courts interpreting the ‘fail
to avail’ or ‘lapse’ language of the FAA have generally held that the section 5
substitution process should be invoked by the trial court only when some ‘mechanical
breakdown in the arbitrator selection process’ occurs or when ‘one of the parties
refuses to comply, thereby delaying arbitration indefinitely.’” In re La. Pac. Corp.,
972 S.W.2d 63, 64–65 (Tex. 1998) (citing In re Salomon Inc., 68 F.3d 554, 560 (2d
Cir. 1995)); see also Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp., 814 F.2d 1324,
1329 (9th Cir. 1987) (holding section 5 substitution process can also be used when
parties reach impasse in making their selection).
          Here, Royce argues that the arbitration of the homeowners’ construction defect
claims was subject to the arbitration provisions outlined in the “2-10 Home Buyers
Warranty” or in the earnest money contracts signed by some of the homeowners. The
homeowners dispute that either of those provisions governed the current proceedings,
arguing that the settlement agreement governed the arbitration of their construction
defect claims.
          Therefore, we must first determine which agreement, if any, governed the
arbitration of the construction defect claims.
          1. Settlement Agreement
          The homeowners contend that the settlement agreement contained an
arbitration provision that superseded all prior arbitration agreements. The primary
concern of a court in construing a written contract is to ascertain the true intent of the
parties as expressed in the instrument. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be
given a definite or certain legal meaning, then it is not ambiguous. Id.
          However, the settlement agreement expressly excepted the construction defect
claims of the homeowners who are currently parties to this appeal from the settlement
agreement and provided that those claims remained pending and were “abated for
arbitration.” The settlement agreement specifically contemplated that the claims
would be either settled or arbitrated, but it did not specify a method of arbitration. 
Subsequently, the homeowners acknowledged that the five homeowners who had
signed an Espree Arbitration Addendum for CAS to arbitrate their claims considered
themselves bound to arbitrate in accordance with their agreements. However,
although all fifteen homeowners were signatories of warranty agreements that
contained provisions to arbitrate under CAS rules, the remaining ten homeowners did
not consider themselves bound by the terms of those agreements.
          The homeowners who moved for arbitration acknowledged in a written motion
their agreement to submit to arbitration in the Settlement Agreement, but they
asserted that the Settlement Agreement entitled them to arbitration under the TAA,
which we have held is superseded by the FAA to the extent it is inconsistent with the
TAA. No method of arbitration was, however, specified. Under Texas law, “A
partially integrated agreement is a final and complete expression of all the terms
addressed in that written agreement, but is not a final and complete expression of all
the terms the parties have agreed upon.” Morgan Bldgs. & Spas, Inc. v. Humane
Soc’y, 249 S.W.3d 480, 486 (Tex. App.—Beaumont 2008, no pet.). Rather, courts
must consider “surrounding circumstances in determining whether, and to what
degree, an agreement is integrated.” Id.; see also Sun Oil Co. v. Madeley, 626 S.W.2d
726, 731–32 (Tex. 1981) (holding that surrounding circumstances are considered in
determining whether written agreement is complete and exclusive statement of
terms); DeClaire v. G & B McIntosh Family Ltd. P’ship, 260 S.W.3d 34, 45 (Tex.
App.—Houston [1st ] 2008, no pet.) (holding that all prior negotiations and
agreements are presumed merged into the final agreement but that parol evidence may
be admissible to show collateral, contemporaneous agreements that are consistent
with the underlying agreement).
          We hold that, while the Settlement Agreement does constitute an agreement to
submit the construction defect claims to arbitration, it does not contain a final and
complete expression of all the terms the parties had agreed upon, specifically, the
method of arbitration, which the parties had previously agreed should be conducted
by CAS. See Morgan Bldgs. & Spas, 249 S.W.3d at 486; see also Sun Oil Co., 626
S.W.2d at 731–32; DeClaire, 260 S.W.3d at 45.
          We turn, therefore, to whether the trial court erred by not referring the
arbitration to CAS.
          2. Failure to Appoint CAS Arbitrator 
          The homeowners contend that, even if the settlement agreement did not
supersede the previous arbitration agreements, those arbitration provisions were not
binding on the arbitration of the construction defect claims. The homeowners argue
that the construction defect claims “are completely independent of the third party
insured limited warranty contract and have been maintained without reference to the
supplied warranty booklet; therefore these claims are not subject to and are not
governed by limited warranty provisions.”


 The homeowners also argue that
Royce’s two-year delay in seeking to have a CAS arbitration initiated constituted a
failure of the agreed method of arbitration and that CAS arbitration was not possible
under the circumstances of this case because CAS refused to proceed with the
arbitration as the claims stood at the time it was contacted by counsel for the
homeowners. We conclude that we need not reach the homeowners’ argument that
their construction defect claims were not subject to CAS arbitration under their
warranty agreements because the trial court did not err in appointing McDonald the
arbitrator for all fifteen homeowners.
          Section 5 of the FAA provides that the agreed-upon method of appointing an
arbitrator can be set aside under some circumstances. 9 U.S.C. § 5; see also In re La.
Pac. Corp., 972 S.W.2d at 64–65 (holding that section 5 substitution process should
be invoked by trial court when some “mechanical breakdown in the arbitrator
selection process” occurs); Pac. Reins. Mgmt. Corp., 814 F.2d at 1329 (holding
section 5 substitution process can also be used when parties reach impasse in making
their selection).
          Here, the trial court did not abuse its discretion by appointing an arbitrator
because the record reflects that there was a mechanical breakdown in the process of
appointing CAS as arbitrator. The affidavits of both the homeowners’ counsel and
of Cardell Wade of CAS reflect that arbitration through CAS could not be conducted
unless the homeowners filed their construction defect complaints against Royce
Homes through HBW, which the homeowners had declined to do, citing the
inapplicability of the warranty agreements to their claims.
          Despite having had the warranty agreements in place prior to the initiation of
litigation, Royce Homes never moved to compel arbitration conducted by CAS until
two years after the settlement agreement was entered and more than four years after
it was made a party to the litigation. When the homeowners eventually contacted
CAS, CAS refused to serve as arbitrator. Thus, even if Royce Homes did not waive
its right to arbitration before CAS, a matter we do not decide,


 we find that at this
point there was a mechanical breakdown in the process of appointing an arbitrator. 
Therefore, the trial court was justified in invoking the substitution process set out in
section 5 of the FAA. See In re La. Pac. Corp., 972 S.W.2d at 64–65; see also In re
Brock Specialty Servs., Ltd., 286 S.W.3d 649, 655 (Tex. App.—Corpus Christi 2009,
orig. proceeding) (“Section five of the FAA has been utilized in situations . . . where
the arbitrator specified in the contract was no longer in existence.”).
          We hold that the trial court did not err in appointing an arbitrator not named in
the agreement. We further hold that Tom McDonald did not exceed his authority by
refusing to refer the arbitration to CAS and refusing to conduct the arbitration and
issue the award following CAS procedures because the trial court properly appointed
him as an alternate arbitrator when arbitration through CAS failed. McDonald acted
within the scope of his authority by deciding the issues properly submitted to
arbitration under the parties’ Settlement Agreement—the homeowners’ claims for
construction defects. See Myer, 232 S.W.3d at 408.
          We overrule Royce Homes’ first and second issue.
B.      Manifest Disregard of the Law and Gross Mistake
          Royce Homes also argues that the trial court erred in failing to vacate the award
on the common law ground that the award demonstrates manifest disregard of the law
and gross mistake. Specifically, Royce Homes argues that “McDonald ignored the
well-established law that the rights of the parties are limited by the express warranty
agreements into which they entered,” that “there was absolutely no evidence to
support findings of either liability or actual damages[, or treble damages] under the
DTPA,” that there was no evidence of any breach of an express or implied warranty
or of an unconscionable action, that the homeowners’ DTPA claims were barred by
the statute of limitations, and that the warranty agreement did not provide a basis for
awarding attorney’s fees.
          As we have already discussed, the United States Supreme Court has expressly
rejected the idea that an arbitrator’s “manifest disregard of the law” expanded the
grounds for vacatur of an arbitration award beyond those listed in the FAA. Hall
Street, 128 S. Ct. at 1403; see also Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d
349, 350 (5th Cir. 2009) (holding that Hall Street restricts grounds for vacatur to
those set forth in section 10 of the FAA); cf. Wilko v. Swan, 346 U.S. 427, 74 S. Ct.
182 (1953) (recognizing manifest disregard as ground for vacating arbitration award). 
All of the authority cited by Royce Homes in its brief in support of these common-law
grounds for vacatur predates the Supreme Court’s holding in Hall Street.
          We have already held that the FAA applies to this case. We conclude that Hall
Street forecloses any common-law grounds for vacatur of an arbitration award such
as manifest disregard of the law and gross mistake. See Hall Street, 128 S. Ct. at
1403; see also Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349, 350 (5th Cir.
2009) (holding that Hall Street restricts grounds for vacatur to those set forth in
section 10 of the FAA); Anzilotti, 899 S.W.2d at 266 (holding that courts may not
vacate arbitration award even if it is based upon mistake in law or fact).
          We overrule Royce Homes’ third issue.
Conclusion
          We affirm the judgment of the trial court.
 
 



                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Alcala, and Hanks.