

## NUMBER 13-14-00343-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

BELDON ROOFING COMPANY,                          **Appellant,**

**v.**

SUNCHASE IV HOMEOWNERS'
ASSOCIATION, INC.,                                       **Appellee.**

### On appeal from the 197th District Court
### of Cameron County, Texas.

## OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Opinion by Justice Longoria**

Beldon Roofing Company appeals the district court's order denying its motion to

compel arbitration pursuant to the Federal Arbitration Act (FAA). *See generally* 9 U.S.C.

§§ 1–16 (West, Westlaw through P.L. 113-296).  By one issue, Beldon contends that it has the legal right to arbitrate pursuant to its original contract.  We affirm.

## I. BACKGROUND

In 2008, appellee Sunchase IV Homeowner Association, Inc., hired appellant Beldon Roofing Company to repair damage caused by Hurricane Dolly to roofs at Sunchase's condominium complex.  The contract between the parties consisted of three documents, each of which contained an identical clause providing that "any claim or controversy arising out of or relating to this Agreement or breach thereof, or to any action by an employee or agent of Beldon, shall be settled by arbitration in accordance with the Federal Arbitration Act and the Construction Industry Arbitration Rules of the American Arbitration Association."

In June of 2009, Beldon filed a sworn suit on an account alleging that Sunchase had not paid for the repair work that Beldon performed pursuant to the parties's contract.  Beldon's petition requested that the court "order and administer arbitration of the subject claims to the extent set forth in the agreement of the parties."

Sunchase filed a sworn denial of the account asserting the defenses of waiver, estoppel, and that the arbitration clause was not supported by independent consideration.  Sunchase also countersued, alleging that Beldon performed substandard work and that all of Beldon's repairs failed in whole or in part in less than one year.  Sunchase asserted a variety of causes of action for violations of the Texas Deceptive Trade Practice Act, negligence, breach of express and implied warranties, unspecified statutory violations, breach of contractual duties or duties "otherwise voluntarily assumed," breach of the duty to perform the repair work in a good and workmanlike manner, and fraud in the

inducement.

While Beldon's request to compel arbitration pursuant to the parties's contract was still pending, an agreed order was entered into on December 7, 2010, signed by the court and all the parties. The agreed order provided that "[t]he issues between the parties raised in the above-captioned cause, including any issues with respect to the arbitrability of the case or any issue therein, shall be resolved by and are referred to arbitration, pursuant to Chapter 154, et seq., TEX. CIV. [*sic*] P. & REM. CODE." The order specifically provided that the Texas Rules of Civil Procedure should be followed in the arbitration except as modified by a subsequent order of the court or by a Rule 11 agreement of the parties. *See* TEX. R. CIV. P. 11. Thereafter, on September 29, 2011, the trial court issued a second agreed order which contained all the terms of the first agreed order and also appointed the Honorable Robert Garza of Brownsville, Texas, as the arbitrator (the "Garza Arbitration").[1]

The record does not reflect any activity in the case between the date of the second agreed order and a May 15, 2013 status hearing. Following the status hearing, the arbitration before Garza was set for November 19, 2013. On October 13, 2013, Beldon faxed a motion to Garza requesting to continue the arbitration hearing. This document was never filed with the trial court and is not part of the record. *See Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001) (per curiam) (refusing to consider an order that was not in the clerk's record). However, we infer from the text of Sunchase's response that Beldon requested arbitration pursuant to the terms of the original contract rather than the agreed orders. Specifically, Beldon requested that Garza appoint a panel of three neutral

---

[1] Any reference in this opinion to "the agreed orders" without a preceding number refers to the first two agreed orders.

3

construction-industry experts to decide the case. The American Arbitration Association's Construction Industry Arbitration Rules, which the parties's original contract specified would govern any arbitration between them, provide that all disputes where the claimed damages exceed one million dollars exclusive of interest, attorneys's fees, arbitration fees, and costs must be decided by such a panel. Sunchase disputed in its response that the amount of damages it claimed changed from the beginning of the case but expressly stipulated that it was not seeking recovery on its counterclaim in excess of $999,999.99, exclusive of interest, attorneys's fees, arbitration fees, and costs. Garza never ruled on Beldon's motion, and it was never filed with the trial court.

On November 15, 2013, a third agreed order signed by both the trial judge and Garza granted Sunchase's request that it have the option to withdraw its stipulation regarding the amount of damages it was seeking "in the event significant damage to the Sunchase condominium complex occurs that is unknown at this time." However, the third agreed order provided that the stipulation would remain in force until Sunchase chose to withdraw it. Sunchase has not exercised its right under the third agreed order.

On November 14, 2013, Beldon filed a combined motion to stay the arbitration and a motion for leave to designate as a responsible third party Duro-Last Roofing, Inc., the manufacturer of the roofing materials that Beldon installed on Sunchase's property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a) (West, Westlaw through 2013 3d C.S.). Beldon's motion cited reports prepared by experts hired by Sunchase which, according to Beldon, challenged the manufacture, design, and inspection of the roofing system rather than the quality of the repair work Beldon performed, which Beldon asserted had earlier been the focus of Sunchase's claims. A fourth agreed order signed by both the

4

trial judge and the arbitrator on November 22, 2013 granted Beldon's motion. Beldon successfully joined Duro Last as a third party.

On November 22, 2013, a fifth order signed by the trial judge, the arbitrator, and counsel for Beldon and Sunchase granted Beldon's motion that sought to continue the arbitration hearing, dismiss Beldon's claims against Sunchase with prejudice, and realign the parties so that Sunchase became the plaintiff and Beldon the defendant. Following the realignment, Sunchase amended its pleadings to add claims for negligence, strict product liability, and other claims against Duro Last.

On May 13, 2014, Beldon filed a motion with the trial court requesting a continuance of the arbitration hearing. Beldon argued that the interests of justice required the court to appoint a panel of three construction-industry experts to arbitrate the dispute as required by the Construction Industry Arbitration Rules "to give effect to the express requirements of the binding arbitration clause that governs the parties' claims." Alternatively, Beldon stated in the motion that it was withdrawing its consent to the agreed orders referring the parties to arbitration. The trial court did not rule on the motion, and there is no evidence that Beldon ever requested a ruling or objected to the court's failure to rule.

On June 6, 2014, Beldon filed another motion again seeking to compel arbitration pursuant to the parties's original contract. This motion made substantively the same arguments as the motion of May 13, 2014, and requested the same relief except that Beldon also requested, in the alternative, that the court submit the case for a jury trial. Over Beldon's objections, this motion was submitted to Garza. Garza signed an order denying Beldon's motion. The trial judge signed the same order issued by Garza.

5

Beldon filed a notice of appeal of the order denying Beldon's motion of June 6th seeking to compel arbitration pursuant to the original contract. *See id.* § 51.016 (West, Westlaw through 2013 3d C.S.) (authorizing an interlocutory appeal in the same circumstances in which the FAA would permit an appeal of a federal district court's order). Sunchase moved to dismiss Beldon's appeal for lack of appellate jurisdiction. By an order dated July 30, 2014, this Court denied Sunchase's motion to dismiss for lack of jurisdiction and granted Beldon's motion to stay all proceedings in the trial court, including the Garza Arbitration.

## II. JURISDICTION

We first address Sunchase's argument that this Court lacks jurisdiction because Beldon's appeal is untimely. *See Alfonoso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (per curiam) (holding that a court may consider its own subject matter jurisdiction at any time).

### A. Standard of Review and Applicable Law

Appellate courts generally only have jurisdiction over final judgments, but the Texas Legislature has provided by statute that a party may appeal from certain interlocutory orders. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). We strictly construe such statutes as narrow exceptions to the general rule that only final judgments are appealable. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). In a case where the FAA applies, a party may appeal an interlocutory order in the same circumstances that the FAA would permit an interlocutory appeal of a federal district court's order. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016. Whether the order denies a

motion to arbitrate is determined by the substance and function of the order and not its caption. *ReadyOne Indus., Inc. v. Torres*, 394 S.W.3d 720, 722 (Tex. App.—El Paso 2012, no pet.). As relevant here, a party may appeal an order denying a motion to compel arbitration. *Acad., Ltd. v. Miller*, 405 S.W.3d 152, 154 (Tex. App.—Houston [1st Dist.] 2013, no pet.). To do so, a notice of appeal must be filed within twenty days of the date the trial court signed the order denying the motion to compel arbitration. TEX. R. APP. P. 26.1(b), 28.1(b).

## B. Discussion

Sunchase asserts that Beldon's appeal is untimely and that this Court lacks jurisdiction as a result because Beldon's motion of October 13, 2013 requested the same substantive relief as the motion from which Beldon appealed. Sunchase reasons that Beldon renamed and re-urged the October 13, 2013 motion to improperly invoke this Court's jurisdiction. *See City of Houston v. Estate of Jones*, 388 S.W.3d 663, 665 (Tex. 2012 (per curiam) (holding that when a plea to the jurisdiction based on a specific statutory provision has been reversed, a party may not refile a second plea based on the same statutory provision to again invoke the court of appeals' interlocutory jurisdiction).

Sunchase correctly states the law that, for jurisdictional purposes, a party may not rename and refile a motion on which the trial court has already ruled, but we disagree that such a circumstance occurred here. Appellate timelines run from the date of the order denying the motion, not the filing of the motion itself. *See id.* Even if we assume, *arguendo*, that the October 13, 2013 motion was presented to the trial court, the text of the second agreed order reflects that the trial court considered Beldon's combined motion to dismiss its own claims and realign the parties, but it does not reflect that the court

7

considered the October 13, 2013 motion. Sunchase argues that the effect of the second agreed order was to deny arbitration under the FAA, but denying a motion which has the effect of delaying or denying arbitration is insufficient to confer jurisdiction. We are to strictly construe statutes conferring interlocutory jurisdiction, s*ee CMH Homes*, 340 S.W.3d at 447, and accepting Sunchase's argument would permit interlocutory jurisdiction over any order denying a motion that had the effect of delaying or preventing arbitration regardless of the relief actually requested in the motion. *See ReadyOne Indus.*, 394 S.W.3d at 722 (holding that they court had no appellate jurisdiction over an order deferring consideration of a motion to compel arbitration); *Atlas Gulf-Coast, Inc. v. Stanford*, 299 S.W.3d 356, 359 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that the court of appeals had no appellate jurisdiction over an order denying a motion to set aside an agreed motion to arbitrate); *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.*, 95 S.W.3d 511, 515–16 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding no jurisdiction over order refusing to stay litigation to permit arbitration when no motion to compel arbitration had been filed).

The only motion which, in substance, requested the court to compel arbitration under the FAA was the motion of June 6, 2014. *See ReadyOne Indus.*, 394 S.W.3d at 722. Beldon's notice of appeal was timely as measured from the date that the trial judge denied that motion. *See* TEX. R. APP. P. 26.1(b), 28.1(b). We conclude that we have jurisdiction over this appeal.

## III. ARBITRATION

### A. Applicable Texas Arbitration Law

The dispute between the parties involves the intersection of the FAA, the Texas Arbitration Act (TAA), and the common law of Texas. To put this dispute in context, we begin with a brief discussion of all three legal regimes governing arbitration in Texas.

Texas law has long favored the arbitration of disputes. *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 245 (Tex. 2002). Two main statutes govern arbitration in Texas: the FAA and the TAA. *See generally* 9 U.S.C. §§ 1–16; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098 (West, Westlaw through 2013 3d C.S.). Where applicable, the effect of both acts is to make private agreements to arbitrate binding and enforceable in court to the same extent as any other contractual provision. 9 U.S.C. § 2; TEX. CIV. PRAC. & REM. CODE ANN. § 171.001; *see In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 891 (Tex. 2010) (orig. proceeding) ("The goal is to discern the true intentions of the parties, as the FAA's primary purpose is to ensure private agreements to arbitrate are enforced according to their terms, no more, no less.").

If neither the FAA nor the TAA applies, Texas courts may judge the validity of arbitration agreements under common law rules. *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351–52 (Tex. 1977); *Collins v. Tex. Mall, L.P.*, 297 S.W.3d 409, 415 (Tex. App.—Fort Worth 2009, no pet.). Under the common law, a party may withdraw from an arbitration agreement at any time before the arbitrator renders an award so long as the party does so unequivocally. *L. H. Lacy Co.*, 559 S.W.2d at 352. The only penalty for revocation is damages, if any, for breach of contract. *Id.* If a common-law arbitration

results in a final award, the award binds the parties in the absence of "fraud, mistake, or misconduct." *Id.*

The Texas Legislature chose to enact a separate set of nonbinding alternative-dispute resolution procedures in the Alternative Dispute Resolution Act, which is codified in chapter 154 of the Texas Civil Practice and Remedies Code ("ADR Act"). *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 154.001–.073 (West, Westlaw through 2013 3d C.S.). The stated purpose of the ADR Act is to:

> fulfill the policy of this state to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures.

*Id.* § 154.002. To advance this purpose, the ADR Act permits a court, either on its own motion or on agreement of the parties, to refer a dispute to a statutorily-established alternative dispute resolution procedure, an alternative dispute resolution organization, or a "nonjudicial and informally conducted forum for the voluntary settlement of citizens' disputes through the intervention of an impartial third party." *Id.* § 154.021. A party may object to the referral within ten days of receiving notice of it. *Id.* § 154.022. The court may not refer the dispute if it determines that there is a reasonable basis for the objection. *Id.* In an arbitration proceeding under section 154.027, if the parties stipulate beforehand the arbitrator's award will be binding and "is enforceable in the same manner as any contract obligation." *Id.* § 154.027(b).

## B. Standard of Review and Procedure for Compelling Arbitration

We review a denial of a motion to compel arbitration for abuse of discretion, reviewing questions of law de novo and factual determinations under a no-evidence

standard of review. *See U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 846 (Tex. App.—Corpus Christi 2011, pet. denied).

The party attempting to compel arbitration must establish (1) that an arbitration agreement exists and (2) that the dispute falls within the scope of the agreement. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). Whether a contract to arbitrate exists is a question of law that we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Courts decide whether a valid arbitration agreement exists according to and by applying principles of state contract law. *Id.* Once the court finds that an arbitration agreement exists and the parties's disputes are within its scope, the burden shifts to the party opposing arbitration to establish an affirmative defense to arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). At this point in the proceedings, the law imposes a strong presumption in favor of arbitration. *In re D. Wilson Const. Co.*, 196 S.W.3d at 782–83; *see J. M. Davidson*, 128 S.W.3d at 227 (observing that the presumption in favor of arbitration only arises after the court has established that an agreement to arbitrate exists and covers the parties's dispute).

### C. Discussion

#### 1. Is there an Agreement to Arbitrate?

Neither party disputes that their original contract provided that any arbitration between them would be conducted "in accordance with the Federal Arbitration Act and the Construction Industry Arbitration Rules of the American Arbitration Association." When the parties expressly contract for the FAA to govern the arbitration clause in their

contract, courts will uphold that choice. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) (per curiam).

The parties also do not contest that they entered into a valid Rule 11 Agreement requiring the dispute to be submitted for arbitration under the ADR Act. *See Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 644 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that a Rule 11 agreement has the force of a contract). Parties who contracted to resolve their disputes via arbitration have the power to modify or revoke that agreement by a subsequent agreement. *See Valerus Compression Servs., LP v. Austin*, 417 S.W.3d 202, 209–10 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re F.C. Holdings, Inc.*, 349 S.W.3d 811, 815 (Tex. App.—Tyler 2011, orig. proceeding [mand. denied]); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 808 (Tex. App.—Dallas 2008, pet. denied). Whether the parties modified their agreement is a matter of state contract law. *See J.M. Davidson*, 128 S.W.3d at 227. The parties dispute whether Beldon may revoke its agreement to arbitrate under the ADR Act or whether the FAA preempts the parties's agreement to arbitrate under the ADR Act.

### 2. What Law Governs the Garza Arbitration?

Before addressing Beldon's arguments, we must first resolve the parties's dispute over which law governs the Garza Arbitration. The first agreed order provided that the parties's dispute was "referred to arbitration, pursuant to Chapter 154, et seq., TEX. CIV. [*sic*] P. & REM. CODE" and the second agreed order contained the same language. Sunchase asserts that the "et seq." language in the agreed orders means that both the ADR Act and the TAA apply because the TAA is codified in the pages of the Texas Civil Practice and Remedies Code that follow the ADR Act. Beldon responds that the two acts

12

cannot, by their terms, apply to the same proceeding because they provide for contradictory procedures and results. We agree with Beldon.

Whether the provisions of the TAA can apply in a proceeding where the ADR Act is applicable is a matter of statutory construction—a question of law that we review de novo. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013). We conclude that the two acts may not apply to the same proceeding because the nature and type of the arbitrations to which the two laws apply and the legal effect of the resulting arbitral awards under the two acts are different. The TAA, by its express terms, contemplates only binding arbitration that is subject to extremely limited judicial review. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.053, 171.054, 171.081, 171.087–171.092; *see also In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 18 (Tex. App.—Corpus Christi 2010, no pet.) (observing that a final arbitral award under the TAA has "the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it"). Arbitration under the ADR Act, by contrast, is nonbinding unless the parties stipulate beforehand that the award will be binding. TEX. CIV. PRAC. & REM. CODE ANN. § 154.027. Even if the parties stipulate that an award is binding, the award is in the nature of a contractual obligation that must be enforced by proper pleading and proof. *Id.*; s*ee Padilla v. LaFrance*, 907 S.W.2d 454, 462 (Tex. 1995) (describing the requirements to enforce a settlement agreement as a contract after one party withdraws consent to the agreement). Moreover, the TAA applies only to enforce private agreements to arbitrate between parties, while the ADR Act applies only to court-ordered referrals to arbitration. *In re Cartwright*, 104 S.W.3d 706, 711 (Tex. App.—

Houston [1st Dist.] 2003) (orig. proceeding) (op. on reh'g); *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 221 (Tex. App.—Houston [1st Dist.] 1996, no writ). We conclude from the foregoing that the TAA is inapplicable to court-referred arbitration proceedings. *See In re Cartwright*, 104 S.W.3d at 711; *Porter & Clements, L.L.P.*, 935 S.W.2d at 221. The ADR Act and not the TAA is applicable to the Garza Arbitration.

### 3. Does Beldon Have a Right to Withdraw from the Garza Arbitration?

Beldon asserts that the trial court abused its discretion because it had a right to withdraw from the agreed orders. Beldon reasons that because the ADR Act does not address revocation, the common-law rule permitting any party to withdraw from an arbitration before it results in an award applies to "fill the gap." *See L.H. Lacy*, 559 S.W.2d at 352; *see also Jackson v. Thweatt*, 883 S.W.2d 171, 175 (Tex. 1994) (observing that when a statue is silent on a matter addressed by the common law "we turn to the common law to fill the gap") (internal quotation marks omitted). We disagree with Beldon because we conclude that the ADR Act addresses withdrawal from arbitration.

Statutory construction is a question of law that we review de novo. *See BMTP Holdings*, 409 S.W.3d at 641. Our goal in construing a statute is to ascertain and give effect to the Texas Legislature's intent as expressed in the language of the statute. *Id.* We look first to the "plain and common meaning of the statute's words." *Id.* We examine the statute as a whole to give meaning to every part. *Id.*; *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

We conclude that the ADR Act does not permit revocation of an agreement to arbitrate at any time before the arbitrator renders an award. The ADR Act provides that "[a] court may, on its own motion or the motion of a party, refer a pending dispute for

14

resolution by an alternative dispute resolution procedure." TEX. CIV. PRAC. & REM. CODE ANN. § 154.021(a). Proceedings under the ADR Act are "voluntary" and, consistent with that voluntary nature, the trial court has no power to require parties to settle their differences or even to negotiate in good faith. *See In re Acceptance Ins. Co.*, 33 S.W.3d 443, 451–52 (Tex. App.—Fort Worth 2000) (orig. proceeding). However, Texas courts are unanimous that section 154.021(a) of the ADR Act grants the trial court the authority to compel the parties to participate in the proceedings once the time to object has passed. *Id.*; *In re Daley*, 29 S.W.3d 915, 918 (Tex. App.—Beaumont 2000, no pet.) (orig. proceeding); *Roberts v. Rose*, 37 S.W.3d 31, 34 (Tex. App.—San Antonio 2000, no pet.); *Tex. Parks & Wildlife Dep't v. Davis*, 988 S.W.2d 370, 375 (Tex. App.—Austin 1999, no pet.); *Nueces County v. De Pena*, 953 S.W.2d 835, 836 (Tex. App.—Corpus Christi 1997, no writ); *Matter of Marriage of Ames*, 860 S.W.2d 590, 591 (Tex. App.—Amarillo 1993, no writ). To hold otherwise would render the ADR Act ineffective to fulfill its purpose, which is to "compel referral" of disputes. *In re Acceptance Ins. Co.*, 33 S.W.3d at 452.

The foregoing cases arose in the context of court-ordered mediation under section 154.023 of the ADR Act, but we find their reasoning to be sound and apply it to this case. There is no indication in the text of the ADR Act that the Texas Legislature intended to treat court-referred arbitration differently from court-referred mediation or any of the other dispute-resolution procedures provided for in the ADR Act. To read an exception permitting withdrawal from arbitration into section 154.027 of the ADR Act would be inconsistent with the Act's statutory scheme and render section 154.027 ineffective to fulfill its purpose. *See id.* (observing that the purpose of the ADR Act is to "compel referral" of disputes); *see also BMTP Holdings*, 409 S.W.3d at 641. We decline to read

15

such an exception into the ADR Act absent some indication in the text that the Texas Legislature intended to treat arbitration under the ADR Act differently from the Act's other procedures.  We reject Beldon's argument.

### 4.  Does the FAA Preempt the ADR Act?

Beldon argues next that it had a right to immediate arbitration under the FAA because the FAA preempts nonbinding state-law procedures for resolving disputes.  On the facts of this case, we disagree.

The United States Supreme Court explained the preemptive effect of the FAA as follows:

> The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.  While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.  Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.  It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal citations, quotation marks, and punctuation omitted).  Put more simply, the FAA is "aimed at state-law hindrances to enforcement of arbitration agreements not applicable to contracts generally."  *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 98 (Tex. 2011) (applying and discussing *Volt* and subsequent United States Supreme Court case law).

However, the FAA does not stand in the way of agreements to arbitrate that differ from the FAA's procedures.  In *Quinn*, for example, the Texas Supreme Court addressed

16

an arbitration agreement which allowed judicial review of an arbitral award if the arbitrator made a reversible error of state law. *Id.* at 97. The Court held that the agreement was enforceable under the TAA and that the FAA did not preempt it. *Id.* at 98–101. The Court cited to *Volt*, where the United States Supreme Court ruled that the FAA did not preempt a state statute which allowed the trial court to stay arbitration while one of the parties to the arbitration resolved related litigation with nonparties. *Id.* at 99 (citing *Volt*, 489 U.S. at 478–79). The *Volt* Court explained that:

> [w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

*Volt*, 489 U.S. at 478–79.

In the present case, neither party disputes that they entered into a valid Rule 11 agreement pursuant to Texas law to refer their disputes to Garza for arbitration under the ADR Act. The parties who make an arbitration agreement also have the power to enter into agreements to modify, supersede, or delay it. *See Roehrs,* 246 S.W.3d at 808; *In re F.C. Holdings,* 349 S.W.3d at 815. Beldon argues that the FAA nevertheless preempts their agreement and cites to *Preston v. Ferrer* for support. 552 U.S. 346, 357–58 (2008). However, we conclude that *Preston* is readily distinguishable. The parties in *Preston* contracted to arbitrate any future disputes under the FAA and made no subsequent agreement altering or modifying it. *Id.* at 350. When one party attempted to compel arbitration under their contract, the other attempted to have the dispute litigated first before an administrative agency and relied on a California state law which vested

17

exclusive jurisdiction over that type of dispute in the Labor Commissioner. *Id.* The United States Supreme Court ruled that the FAA preempted the California statute because "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Id.* at 359. In this case, in contrast, the parties entered into an agreement to first attempt to resolve their disputes in the Garza Arbitration subject to the ADR Act. Because *Preston* does not address such later agreements, we conclude that *Preston* does not control the outcome of this case. *See id.*

We have found no authority that the FAA preempts an agreement such as that reached by Beldon and Sunchase. The United States Supreme Court recently reiterated that the "text [of the FAA] reflects the overreaching principle that arbitration is a matter of contract." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. \_\_\_, 133 S. Ct. 2304, 2309 (2013). By enforcing the parties's Rule 11 agreement, we give effect to the contractual rights and expectations of the parties without doing violence to the policies behind the FAA. *See id.*; *Volt*, 489 U.S. at 479. Guided by this overreaching principle and the analyses of the *Volt* and *Quinn* Courts, we conclude that the FAA does not preempt the parties's agreement to submit their dispute to arbitration under the ADR Act. *See Am. Exp. Co,* 570 U.S. at \_\_\_, 133 S. Ct. at 2309; *Volt*, 489 U.S. at 478–79; *Quinn*, 339 S.W.3d at 98. We reject Beldon's argument.

### 5. Summary

In summary, we hold: (1) the ADR Act alone governs the Garza Arbitration; (2) the ADR Act does not permit Beldon to withdraw from the Garza Arbitration; and (3) the FAA does not preempt the ADR Act under the facts of this case. Thus, the trial court did not

abuse its discretion by denying Beldon's motion to compel arbitration according to the original contract. *See Castillo*, 347 S.W.3d at 846. We overrule Beldon's sole issue on appeal.

## IV. CONCLUSION

We affirm the order of the trial court and remand for further proceeding consistent with this opinion, including an arbitration before Garza. Further, we lift the stay imposed by our order of July 30, 2014.


NORA L. LONGORIA
Justice


Delivered and filed the
4th day of June, 2015.