

**NUMBER 13-17-00603-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **UNIFIRST LINEN, A DIVISION OF UNIFIRST HOLDINGS, L.P.,** | **Appellant,** |
| **v.** | |
| **PONCHO'S RESTAURANTS, INC. D/B/A PONCHO'S IV,** | **Appellee.** |

**On appeal from the County Court at Law No. 4 of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa**
**Memorandum Opinion by Justice Contreras**

In this accelerated interlocutory appeal, appellant UniFirst Linen, a division of UniFirst Holdings, L.P. (UniFirst), challenges the trial court's denial of its motion to compel arbitration in a dispute against appellee Poncho's Restaurants, Inc. d/b/a Poncho's IV (Poncho's). We reverse and remand.

## I. BACKGROUND

The parties executed a Customer Service Agreement in September 2012 for the provision of linen services. The agreement contained the following arbitration clause:

> All disputes of whatever kind between Customer and UniFirst based upon past, present or future acts, whether known or unknown, and arising out of or relating to the negotiation, formation or performance of this Agreement shall be resolved exclusively by final and binding arbitration. The arbitration shall be conducted in the capital city of the state where Customer has its principle [sic] place of business (or some other location mutually agreed to by Customer and UniFirst) pursuant to the expedited procedures of the Commercial Arbitration Rules of the American Arbitration Association and shall be governed by the Federal Arbitration Act. Customer acknowledges that, with respect to all disputes, it has voluntarily and knowingly waived any right it may have to a jury trial . . . . This paragraph is governed by New York law (exclusive of choice of law). The arbitrators shall award to the substantially prevailing party, if any, as determined by the arbitrators, all of its costs and fees. "Costs and fees" are defined as all reasonable pre-award expenses of the arbitration, including the arbitrators' fees, administrative costs, travel expenses, out-of-pocket expenses, such as copying and telephone expenses, court costs, witness fees, and attorney's fees.

On February 26, 2016, UniFirst filed suit against Poncho's in the County Court at Law No. 4 of Hidalgo County, asserting that Poncho's breached the agreement and owed $19,000 in liquidated damages. Two months later, UniFirst filed a motion to compel arbitration based upon the above-referenced clause. Poncho's filed a response arguing that the arbitration clause is unenforceable because it is substantively and procedurally unconscionable. UniFirst then filed a reply to which it attached an affidavit by its Harlingen branch general manager, Curtis Lee Medley, who stated in pertinent part:

> UniFirst has provided linen services to Poncho's restaurant, when there was only one location, for nearly twenty (20) years. UniFirst later serviced at least four (4) Poncho's locations. On September 5, 2012, [Poncho's] entered into a new linen services agreement with UniFirst. . . .

> The Customer Service Agreement contains an arbitration provision. In the past, during negotiation, and upon the request of the customer, UniFirst has agreed to strike this provision, taking into consideration the volume of linen services ordered, the investment required for UniFirst, and other contractual

2

obligations related to a particular customer. This very seldom happens, but the arbitration provision is a negotiated term.

This Customer Service Agreement with Poncho's was for a term of sixty (60) months. About eighteen (18) months into this Customer Service Agreement, Poncho's refused to accept delivery of the linen products ordered, thereby breaching the Customer Service Agreement. Poncho's ordered fourteen (14) items that required personalization. Poncho's has refused to pay for those items, also breaching the Customer Service Agreement.

At a hearing on the motion to compel, Jose Montemayor testified that he entered into the subject agreement as a sales manager for UniFirst. He stated that Jorge Gonzalez, the manager of a Poncho's location, signed the agreement on behalf of Poncho's. Montemayor testified that it is his practice to specifically explain to clients the portions of the agreement dealing with UniFirst's performance guarantee and the early contract termination process. He agreed that he discussed with Gonzalez "the fact that if there was some sort of disagreement that this case would go into arbitration." Montemayor testified that his practice is to inform clients that, if they disagree with a provision of the contract, it can be changed if UniFirst's general manager approves. Montemayor testified that he did not believe Gonzalez was unsophisticated.

On cross-examination by counsel for Poncho's, Montemayor conceded that the term length, performance guarantee, and arbitration provisions were set forth only in small print on the back of the agreement. He stated that he had Gonzalez place his initials next to the performance guarantee section but did not have him place his initials next to the term length or arbitration sections. He acknowledged that he did not know, nor did he explain to Gonzalez, that by agreeing to arbitration Poncho's was waiving its right to a jury trial.

Following the hearing, the trial court denied UniFirst's motion to compel arbitration,

without specifying whether it found the agreement to be procedurally or substantively unconscionable, or both. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2017 1st C.S.).

## II. DISCUSSION

### A. Standard of Review

Generally, a trial court's denial of a motion to compel arbitration is reviewed for abuse of discretion. *Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n, Inc.*, 494 S.W.3d 231, 238 (Tex. App.—Corpus Christi 2015, no pet.). In such a review, while we defer to the trial court's factual determinations that are supported by evidence, we review the trial court's legal determinations de novo. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013). Whether an arbitration agreement is enforceable is a question of law that is subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

Where, as here, the trial court makes no written findings of fact or conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). We will affirm the ruling if it can be upheld on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984).

### B. Applicable Law

A party seeking to compel arbitration[1] must establish that (1) there is a valid arbitration agreement, and (2) the claims raised fall within that agreement's scope. *In re*

---

[1] UniFirst argued in its motion to compel that the Federal Arbitration Act (FAA) applies, rather than the Texas Arbitration Act (TAA), and Poncho's did not dispute that in its written response. At the hearing,

4

*Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *see* 9 U.S.C.A. §§ 2, 4 (West, Westlaw through P.L. 115-140); TEX. CIV. PRAC. & REM. CODE ANN. § 171.021 (West, Westlaw through 2017 1st C.S.).  Arbitration is strongly favored; therefore, once it is established that an arbitration agreement exists and that the claims in question are within the scope of the agreement, a presumption arises in favor of arbitrating those claims and the party opposing arbitration has the burden to prove a defense to arbitration, such as unconscionability.  *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499–500 (Tex. 2015).  "A trial court that refuses to compel arbitration under a valid and enforceable arbitration agreement has clearly abused its discretion."  *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (orig. proceeding) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding)).

In determining whether there is a valid agreement to arbitrate, we apply ordinary principles of state contract law.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding).  One of those principles provides that agreements are unenforceable if they are substantively or procedurally unconscionable.  *Royston*, 467 S.W.3d at 499; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.022 (West, Westlaw through

---

counsel for Poncho's appeared to stipulate that, because UniFirst is a Delaware corporation, the agreement at issue involved interstate commerce, which is generally a prerequisite for application of the FAA.  *See* 9 U.S.C.A. §§ 1, 2 (West, Westlaw through P.L. 115-140).  Nevertheless, as part of his unconscionability argument, counsel for Poncho's noted that if the agreement had been made under the TAA, it would be unenforceable because (1) it involved a transaction in which the amount of consideration was less than $50,000 and (2) it was not signed by an attorney for Poncho's.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(2), (b)(2) (West, Westlaw through 2017 1st C.S.).

Regardless of whether the FAA or TAA applies, the unconscionability analysis is based on state contract law and is therefore the same under either statute.  *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."); *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (noting that, whether a case is governed by the FAA or TAA, "many of the underlying substantive principles are the same," and "rel[ying] interchangeably on cases that discuss the FAA and TAA").

5

2017 1st C.S.) ("A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable at the time the agreement was made."). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision." *Royston*, 467 S.W.3d at 499 (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding)). The test for unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 859 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding). Unconscionability principles are applied to prevent unfair surprise or oppression. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679; *see In re FirstMerit Bank,* 52 S.W.3d at 757.

**B.    Analysis**

By one issue comprising five sub-issues, UniFirst contends that the trial court erred in denying its motion to compel arbitration because: (1) the parties stipulated at the hearing that UniFirst satisfied its burden of proof to establish the existence of an arbitration clause; (2) the arbitration clause is not procedurally unconscionable; and the arbitration clause is not substantively unconscionable because (3) the dispute involves interstate commerce, (4) application of the FAA was the unambiguous intent of the parties, and (5) arbitration is not prohibitively burdensome.

We note that Poncho's has never disputed the existence of an arbitration clause or that the instant dispute falls under its scope. The issue is only whether Poncho's met its burden to establish a defense to the enforceability of the clause on grounds that it was unconscionable. *See Royston*, 467 S.W.3d at 500. Accordingly, we sustain UniFirst's first sub-issue and proceed to discuss the merits of the unconscionability defense.

### 1. Procedural Unconscionability

Poncho's argued in response to UniFirst's motion and in its appellee's brief that the arbitration clause is procedurally unconscionable because: (1) "UniFirst acted through deception, overreaching, or other unethical business practices"; (2) "Poncho's lacked any viable alternative to the provisions of the Agreement and had no bargaining power or ability to change the contract"; and (3) "the relative acumen, knowledge, education, and financial ability of the parties involved demonstrate a lack of meaningful knowledge of the Arbitration Clause and its consequences." *See El Paso Nat. Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex. App.—Amarillo 1997), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999). We disagree.

To support its allegation of "deception, overreaching, [and] other unethical business practices," Poncho's notes that the arbitration clause "is shown in very small print" on the back of the agreement, and it argues that "[t]here is no evidence that the Agreement was presented to Poncho's for review in advance of the execution of the document." It is true that the arbitration clause appears in small print—in fact, the clause is barely legible in the photocopied version of the agreement contained in the appellate record—but it is in the same size print as the other technical terms of the agreement. Poncho's does cite any case law, and we find none, indicating that fine print alone

supports a finding of unconscionability.[2] In any event, Montemayor, the only witness to appear at the motion to compel hearing, testified that he specifically discussed the arbitration clause with Gonzalez at the time the agreement was executed. Poncho's did not present any evidence, by affidavit or live testimony, to support its unconscionability argument in the trial court.

As to whether Poncho's had a "viable alternative" to agreeing to arbitration, Montemayor testified that, in general, if a UniFirst customer does not agree to a term in the company's standard form agreement, the term could be changed upon approval of UniFirst's general manager. Medley's affidavit stated that, on rare occasions in the past, UniFirst's customers had successfully negotiated the removal of the arbitration clause.[3] Even if the company's policy was to never alter the terms of its standard agreement, that would not be enough to show procedural unconscionability. "The principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679. And there is nothing inherently unconscionable about adhesion contracts. *Id.* at 678 (citing *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding)). Here, the uncontroverted evidence established that UniFirst's sales manager discussed the arbitration clause with a Poncho's manager at the time it was signed. Therefore, even if Poncho's was in a less advantageous bargaining position, it has not met its burden to show that it was unfairly surprised by the inclusion of the

---

[2] In fact, Poncho's does not cite a single case in which a court invalidated an arbitration clause on unconscionability grounds.

[3] Medley's affidavit is unclear as to whether Poncho's was one of the customers that, in the past, had negotiated for the removal of the arbitration provision. In any event, Poncho's did not argue in the trial court or on appeal that the clause was unconscionable because of prior dealings between the parties.

8

arbitration clause.  *See id*.; *In re FirstMerit Bank,* 52 S.W.3d at 757 ("The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power.").

Finally, Poncho's argues that "the relative acumen, knowledge, education, and financial ability of the parties involved demonstrate a lack of meaningful knowledge of the Arbitration Clause and its consequences."  *See El Paso Nat. Gas Co.*, 964 S.W.2d at 61. It points to an argument made by UniFirst's trial counsel that Poncho's owner "does construction" and is "not unsophisticated," and it contends that this "tends to prove sophistication with respect to construction and nothing else."  But it was Poncho's burden to establish unconscionability, and the only testimony adduced as to the relative sophistication of the parties was Montemayor's statement that Gonzalez was not unsophisticated.  Moreover, although Montemayor conceded that he was not aware that the arbitration clause entailed the waiver of the right to jury trial, that information was explicitly contained within the text of the clause.  *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding) (holding that absent fraud, misrepresentation, or deceit, parties are bound by terms of the contract they signed, regardless of whether they read it or thought it had different terms); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (holding that a party who has the opportunity to read an arbitration agreement and signs it is charged with knowing its contents); *see also In re Halliburton Co.*, 80 S.W.3d at 568–69 (holding that an arbitration clause was accepted by an employee despite employee's claim that he did not understand it).

9

For these reasons, we conclude that the trial court abused its discretion if it determined that the arbitration clause was unenforceable on grounds of procedural unconscionability. UniFirst's second sub-issue is sustained.

### 2. Substantive Unconscionability

In response to UniFirst's motion to compel and in its appellee's brief, Poncho's argues that the arbitration clause is substantively unconscionable because "it is written such that it circumvents the sound public policy of the State of Texas." In particular, Poncho's argues that, although the Texas Arbitration Act (TAA) does not apply to arbitration clauses involving transactions of under $50,000 unless signed by the parties' attorneys, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(2), (b)(2) (West, Westlaw through 2017 1st C.S.), the agreement at issue here invokes the Federal Arbitration Act (FAA), which has no such restrictions. According to Poncho's, it would be contrary to the public policy of Texas to compel arbitration in such a scenario.

Again, we disagree. "The FAA may govern a written arbitration clause enforced in Texas state court if the parties have expressly contracted for the FAA's application." *In re Brock Specialty Servs., Ltd.*, 286 S.W.3d 649, 653 (Tex. App.—Corpus Christi 2009, orig. proceeding) (citing *In re AdvancePCS Health*, 172 S.W.3d at 605–606 & n.3). And "[w]hen parties have designated the FAA to govern their arbitration agreement, their designation should be upheld." *Id.* (citing *In re AdvancePCS Health*, 172 S.W.3d at 606 & n.3). Here, the agreement at issue expressly stated that arbitration would be governed by the FAA. Moreover, Poncho's counsel appeared to stipulate at the hearing that, because UniFirst is a Delaware corporation, the agreement involved interstate commerce,

10

which is generally a prerequisite for application of the FAA. *See* 9 U.S.C.A. §§ 1, 2; *In re Rubiola*, 334 S.W.3d at 223.

Poncho's further argues that the clause is substantively unconscionable because it "places unfair burdens" on the company. Specifically, Poncho's notes that the default location for arbitration is set as "the capital city of the state where [Poncho's] has its principle [sic] place of business," which happens to be several hundred miles away from Poncho's restaurant locations.[4] Poncho's also complains of the provisions stating that New York law governs the arbitration clause and requiring the award of costs and fees to the substantially prevailing party. However, Poncho's did not cite any authority at trial or on appeal, and we find none, establishing that such provisions render an arbitration clause substantively unconscionable. We note that the choice-of-law and cost-allocation provisions are equally applicable to both parties; therefore, they do not indicate that the agreement was impermissibly one-sided. *See In re FirstMerit Bank,* 52 S.W.3d at 757 (noting that the basic test for unconscionability asks whether the contract is "one-sided"); *see also In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (same). Further, although high costs may in some circumstances render an arbitration agreement unconscionable, the party opposing arbitration must prove the likelihood of incurring such costs, and Poncho's did not do that here. *Id.* at 756 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000)).

---

[4] The clause specifically permits the parties to mutually agree on an alternative location for arbitration.

For the foregoing reasons, we conclude that Poncho's failed to meet its burden in the trial court to show that the arbitration clause is substantively unconscionable. *See Royston*, 467 S.W.3d at 500.[5] UniFirst's third, fourth, and fifth sub-issues are sustained.

### III. CONCLUSION

We reverse the trial court's judgment denying UniFirst's motion to compel arbitration. The cause is remanded with instructions to grant the motion and for further proceedings consistent with this opinion.

DORI CONTRERAS
Justice

Delivered and filed the
5th day of July, 2018.

---

[5] Notwithstanding our ruling, Poncho's may be able to raise its unconscionability defense in the arbitral forum. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding) (concluding that an arbitration clause was not unconscionable but "recogniz[ing] that the plaintiffs are free to pursue their unconscionability defense in the arbitral forum").